IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JODY BARKER, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 21-CV-00225-SRB |
| | ) |
| AMGUARD INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court is Defendant AmGuard Insurance Company's ("AmGuard") Motion for Summary Judgment. (Doc. #48.) For the reasons discussed below, the motion is GRANTED.

I.    BACKGROUND

A.    **The Property**

Plaintiffs Jody and Karen Barker ("Plaintiffs") purchased a three-story multi-family apartment building, located at 506 Chesnut in Cameron, Missouri ("the Property") on March 9, 2009. (Doc. #50-1.) Prior to purchase, steel beams were installed in the basement, along the east and south walls. Images captured from Google Street View in 2013 show leaning in the south and east walls.

Prior to 2017, Plaintiffs experienced no issues with the Property. No tenant or property managers had reported issues with the building. On March 13, 2017, the Building Inspector for the City of Cameron ("the City"), Paul Beckwith ("Beckwith"), inspected the exterior of the Property. Beckwith is not a professional engineer, and prior to becoming a city inspector he "[w]orked with [his] dad and built houses and remodeled houses through the years." (Doc. #50-7, p. 5.) Beckwith observed "the foundation failing in several areas" and deflection in the south wall. (Doc. #50-8, p. 1.) Beckwith testified that deflection is often caused by "not

getting water away from the foundation" or "poor drainage," and can be fixed by "sloping the ground away from the structure." (Doc. #50-7, p. 3.) It was Beckwith's opinion that the Property violated the City's ordinances.

On March 22, 2017, Beckwith notified Plaintiffs that the Property "has been found to be a substandard dangerous building" and is declared a public nuisance in violation of City Code §§ 3-163.1[1] and 3-163.6.[2] The notice further stated that Plaintiffs were ordered to begin repairing the structure within thirty days and complete repairs within 180 days. After receiving the letter, Plaintiff Jody Barker ("Jody") contacted Beckwith, informing him that steel beams had been installed to stop the deflection.

At the invitation of Jody, Beckwith returned to the Property and found the steel beams were not sufficient to remedy the issues he found. Beckwith also testified that the interior of the Property was "filthy," had "fecal matter in the hallway," and had "numerous cracks in the sheetrock." (Doc. #50-7, p. 7.) Beckwith testified the basement walls were decaying, there was "termite damage," and "water . . . around the foundation[.]" (Doc. #50-7, p. 7.) Beckwith also testified there was "[c]rack[s] in the plaster in the ceilings" due to "wiring issues where tenants had run electrical wires from one apartment to another[.]" (Doc. #50-7, p. 8.) Beckwith stated that it was his personal opinion the cracks in the plaster were due to foundation issues.

On December 7, 2018, Beckwith issued a Notice of Violation to Plaintiffs, informing them again that the Property violated City Code. On December 12, 2017, Plaintiffs hired Carl

---

[1] § 3-163.1 states that a building "whose exterior or interior walls or other vertical structural members list, lean or buckle to such an extent that a plumb line passing through the center of gravity of any such wall or vertical structural members falls outside of the middle third of its base" is a public nuisance. CAMERON, MO., CODE OF ORDINANCES ch. 3, ar. VII, § 3-163.1 (1989).

[2] § 3-163.6 states that a building which "is likely to partially or completely collapse" because of "(i) dilapidation, deterioration or decay; (ii) faulty construction; (iii) the removal, movement or instability of any portion of the ground necessary for the purpose of supporting such building; (iv) the deterioration, decay or inadequacy of its foundation; or (v) any other cause" is a public nuisance. CAMERON, MO., CODE OF ORDINANCES ch. 3, ar. VII, § 3-164.1 (1989).

Koehler ("Koehler"), an engineer, to inspect the Property and issue a report ("the December 2017 Report").

In the December 2017 Report, Koehler stated that the basement walls were experiencing "extensive lateral deflections along the top of the walls inward due to active soil pressures and inadequate restraint of the walls." (Doc. #50-11, p. 1.) Due to these deflections, "the existing wood stud walls . . . have also displaced inwards" which "created a displeasing view along the south side of the property." (Doc. #50-11, p. 1.) Koehler stated "[t]he deflections were primarily due to the inadequate design of the basement walls with regards to their actual loading conditions (top restraint)." (Doc. #50-11, p. 1.) Koehler noted that steel beams previously in place and that "[e]xcessive lateral water pressure [was] not evident . . .but this does not rule out the need to mitigate future water problems by rerouting water away from the home."
(Doc. #50-11, p. 1.) Koehler concluded:

> The existing interior steel column wall reinforcement appears to have worked properly in stopping the excessive inward deflections of the wall. . . . Since it does appear that the interior wall deflections have been dealt with, the exterior stud wall's lower section should be brought back to flush to bring back the original outward appearance of the residence. This may be done by temporarily bracing the top section of the wall (floor framing too as necessary), followed by removal and replacement of the lower wall system. . . . If excessive deflections continue over time, further analysis and reinforcement will be required.

(Doc. #50-11, p. 2.) Plaintiffs understood the issues to be "cosmetic." (Doc. #50-2, p. 2.) Following Koehler's report, Plaintiffs had no work done on the Property besides aesthetic upgrades and an unrelated roof replacement. (Doc. #50-2, p. 3.)

On October 22, 2019, Beckwith sent a Notice of Violation to the tenants of the Property. On November 6, 2019, Beckwith sent Plaintiffs a Notice of Violation, stating that no repairs had been made to the Property, all tenants were removed on October 31, 2019, all utilities had been terminated, and that repairs needed to begin within thirty days. On January 7, 2020, Beckwith

sent another Notice of Violation to Plaintiffs, stating that the Property was in violation of fifteen different city ordinances.

In February 2020, Plaintiffs hired a contractor, Larry Roth ("Roth"), to clean up the Property and get it ready to rent. (Doc. #52, p. 15.) On February 7 and February 11, 2020, Roth inspected the property and noted plaster had fallen from the ceiling and walls. Roth believed that the Property was collapsing.

On April 9, 2020, Plaintiffs hired an engineer, Randy Van Winkle ("Van Winkle"), to inspect the Property. Based on viewing photos of the Property, Van Winkle observed the Property was decaying and believed that the Property's structural integrity was compromised such that it should not be occupied without further structural repairs. Van Winkle did not visit the Property or inspect the property.

On May 19, 2020, Beckwith sent Plaintiffs a notice of hearing regarding "the repair, vacation, or demolition of" the Property. (Doc. #50-21, p. 1.) A hearing was held on June 9, 2020, before the Building Commissioner. Jody and Beckwith were present and presented evidence and testimony. On August 11, 2020, the Building Commissioner issued a written order directing Plaintiffs to "abate all the conditions that constitute violations" of city ordinances "by demolition or remodeling" within thirty days. (Doc. #50-22, p. 5.) The Property was demolished on October 27, 2020.

### B. The Policy Terms

AmGuard issued the Plaintiffs an insurance policy on the Property ("the Policy") for the period of October 23, 2019 to October 23, 2020. Among other things, the Policy provides: "direct physical loss or damage . . . caused by abrupt collapse." (Doc. #50-3, p. 71.) The Policy defines "abrupt collapse" as "an abrupt falling down or caving in of a building or any part of a

4

building with the result that the building or part of the building cannot be occupied for its intended purpose." (Doc. #50-3, p. 71.)

The Policy covers only damage resulting from an abrupt collapse caused by, in relevant part, "[b]uilding decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse[.]" (Doc. #50-3, p. 71.) The Policy excludes from collapse coverage:

> (a) A building or any part of a building that is in danger of falling down or caving in;
> (b) A part of a building that is standing, even if it has separated from another part of the building; or
> (c) A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

(Doc. #50-3, pp. 71–72.) The Policy also includes a relevant exclusion: damages resulting from "[w]ear and tear" are excluded ("the Wear and Tear Exclusion"). (Doc. #50-3, p. 85.)

### C. Plaintiffs' Claim

On April 13, 2020, Plaintiffs submitted a Property Loss Notice under the Policy for an alleged collapse that occurred on March 13, 2020. Plaintiffs provided the following description of loss: "Interior drywall and ceiling collapse. Contractor (Larry Roth) has details and has inspected the property." (Doc. #50-24, p. 1.)

AmGuard retained an engineer, Casey Clay ("Clay"), to inspect the property. At the time of inspection, the Property was still standing. Clay "found damage to the building, to include a leaning foundation, cracks in the walls and ceilings, and unsanitary conditions." (Doc. #52, p. 21.) Further, Clay found that the walls were nearly vertical and that there was no imminent danger of collapse. (Doc. #52, pp. 21–22.) Clay concluded that hidden defects, insect or vermin

damage, and defective materials or methods would not have contributed to the possibility of collapse. (Doc. #50-26, p. 2.)

On February 23, 2021, Plaintiffs filed suit against AmGuard in the Circuit Court of Clay County, alleging that AmGuard vexatiously refused to cover losses claimed under the Policy. Plaintiffs' petition alleges that the Property suddenly collapsed on January 16, 2020. On April 2, 2021, AmGuard removed the case to this Court. AmGuard now moves for summary judgment. Plaintiffs oppose the motion. The parties' arguments are addressed below.

## II. LEGAL STANDARD

Federal Rule Under Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of identifying "the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (cleaned up). If the moving party makes this showing, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Id.* (quotation marks omitted).

## III. DISCUSSION

### A. Applicable Law

"Interpretation of an insurance policy is a matter of state law[.]" *Am. Family Mut. Ins. Co. v. Co Fat Lee*, 439 F.3d 436, 439 (8th Cir. 2006) (citing *St. Paul Fire & Marine Ins. Co. v. Schrum*, 149 F.3d 878, 880 (8th Cir. 1998)). The parties agree that Missouri law applies. "Under Missouri law, the insured has the burden of proving coverage, and the insurer has the burden of proving that an insurance policy exclusion applies." *Id.* (citing *Christian v. Progressive Cas. Ins., Co.*, 57 S.W.3d 400, 403 (Mo. App. S.D. 2001) (per curiam)).

6

B.   Coverage

AmGuard moves for summary judgment, arguing that Plaintiffs cannot prove coverage under the collapse provision because there was no collapse within the meaning of the Policy. Plaintiffs argue that fallen plaster indicates a downward deflection in the property. The Court agrees with AmGuard.

The Policy defines "abrupt collapse" as "an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose." (Doc. #50-3, p. 71.) Plaintiffs' insurance claim states that, between January 16, 2020, and the February 2020, the Property experienced some collapse in its framework. Plaintiffs state that interior plaster had fallen, which would not have occurred without "a significant deflection or downward movement," which would be considered a collapse. (Doc. #52, p. 32.) Specifically, they argue that the fallen plaster is evidence that some of the Property's framework experienced "downward movement or deflection," creating a genuine dispute of material fact as to whether the Property collapsed.[3] (Doc. #52, p. 33.)

The Court agrees with AmGuard, and finds that Plaintiff has not created a genuine dispute of material fact. Plaintiffs have not submitted evidence that the Property's framework itself fell or collapsed. Assuming that the fallen plaster indicates a deflection of the Property's structure, Plaintiffs urge the Court to adopt an interpretation of the Policy that such a deflection is a collapse. This interpretation is inconsistent with the language of the policy. The Policy's collapse provision specifically excludes from coverage any "part of a building that is standing[.]" (Doc. #50-3, pp. 71–72.) It is undisputed that the entire Property was standing prior to its

---

[3] Plaintiffs reference an expert witness, Randy Van Winkle, in support of this statement. However, as the Court granted a motion to exclude Randy Van Winkle's opinions (Doc. #54), the Court declines to consider them here. *See* Fed. R. Civ. P. 56(c) (explaining that assertions must be supported by admissible evidence).

7

Case 4:21-cv-00225-SRB   Document 56   Filed 11/07/22   Page 7 of 8

demolishing. The Court finds that Plaintiffs have not satisfied their burden in showing coverage under the Policy.

Even if Plaintiffs had shown that the Property collapsed within meaning of the Policy, Plaintiffs have not shown that the collapse was caused by "[b]uilding decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse[.]" (Doc. #50-3, p. 71.) The evidence shows that Plaintiffs were aware of such decay in 2017, which is well before the alleged collapse occurring in March 2020. Assuming the problems with the Property occurred due to building decay, Plaintiffs have not shown coverage under the Policy because the record shows Plaintiffs were aware of the presence of decay before the alleged collapse.[4]

### IV.  CONCLUSION

Accordingly, AmGuard's Motion for Summary Judgment (Doc. #48) is **GRANTED.**

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
Dated: November 7, 2022    UNITED STATES DISTRICT JUDGE

---

[4] As the Court finds that Plaintiffs have not satisfied their burden of showing coverage under the Policy, the Court need not address AmGuard's arguments regarding the Policy's exclusions.